## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>  Plaintiff, )<br><br>  v. )<br><br> WEST CREEK, L.L.C.; QUEENSBURY )<br>VILLAGE, INC.; LINDER & COMPANY, INC.; )<br>PETTINARO CONSTRUCTION CO., INC.; )<br>ARCHITECTURE PLUS, P.A.; LANDMARK )<br>ENGINEERING, INC.; HILLCREST )<br>ASSOCIATES, INC; HOWARD L. )<br>ROBERTSON, INC.; LAND TECH, L.L.C; )<br>and BETHANY BAY HOME OWNERS )<br>ASSOCIATION, INC., )<br><br>  Defendants. ) | Civil Action No. 04-1455-SLR |

### EXHIBIT A
### TO
### PLAINTIFF UNITED STATES' UNOPPOSED MOTION FOR
### ORDER DISTRIBUTING AGGRIEVED PERSONS FUND

#### DECLARATIONS OF:

Susan Holland
Evelyn and Donald Biddle
Dorothy Shaffer
Tina Henry
Theresa Wilkes
Janet Garcia
Alfred Davis
Robert Kowalski

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America,                    )
                                             )
      Plaintiff                            )
                                             )
      v.                                   )     C.A. No. 04-1455
                                             )
West Creek, LLC, *et al.*,                   )
                                             )
      Defendants                           )
                                             )

## DECLARATION OF SUSAN HOWLAND

1.   I reside at 124 West Main Street, Middletown, Delaware 19709. From May 27, 2004 to June

1, 2005, I lived at 1200E1 West Creek Village Drive in West Creek Village apartments in

Elkton, Maryland. I have been on workers' compensation since I ruptured a disk in my back on

June 11, 2002. It is suspected that the delay in authorizing back surgery caused permanent

damage to my spinal nerves. I am in chronic pain and use a morphine pump. I also take

antidepressants. My employer is a company called Nurses RX.

2.   When I went out of my apartment with my husband, I used a wheelchair so I could move

about with less pain. Shortly after I moved in, sometime in June 2004, I asked Robin, the

property manager, for two accessible parking spaces and a ramp to my door, which had a stoop a

few inches high. I was married at the time and we had two vehicles. My husband and I have

since separated. Robin tried to bill me $500 for these, but I ignored the bill. I also asked for

shower grab bars to be installed, but the request was never fulfilled and I gave up trying to get

them.

3.   Management installed a designated reserved accessible parking sign in front of my home, but

Page 1 of 3

it straddled the line between two parking spaces. There was no other indication that both spaces were reserved. As a result, one or both spaces were often occupied by other drivers. In one of the spaces, the property management company placed a small, steep wooden ramp up to the sidewalk because there was no curb ramp from the lot surface to the sidewalk. There was also no access aisle for either vehicle space. That meant that, when we were leaving our apartment, my husband would have to back the car out so I could use the ramp to get to the car. Coming home, he would let me out, then back out of the space and pull back in, so I could use the ramp. If I was alone, I had to use a cane rather than the wheelchair because I could not manage all these maneuvers. Cars often ran over the wooden ramp because the vehicle entirely filled the space outlined. As a result, some of the boards cracked and it became harder and somewhat dangerous to use.

4.  The ramp to my front door was also small, steep, and made of wood. It sloped straight up to my entrance threshold and provided no level place for me to rest in the wheelchair in order to unlock my door. Each time I came home, I had to lock the wheels of my wheelchair, unlock the door, push it open, and then unlock the wheels and exert a lot of force to get in the door without rolling back. The entrance threshold inside the apartment was an extra barrier, because it was about two or three inches high and I had to bump the chair over it as well.

5.  The inconvenience, frustration, and pain involved in going back and forth from my apartment to my car prevented me from going out as much I would have liked. I probably made this circuit 40-50 times. Staying inside, at home, on the other hand, contributed to my feelings of isolation and despair over what had happened to me. I was also angry and upset because I did not have the access I needed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May _____, 2005.

_____
Susan Howland

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America,                )
                                         )
    Plaintiff                           )
                                         )
    v.                                  )        C.A. No. 04-1455
                                         )
West Creek, LLC, *et al.*,               )
                                         )
    Defendants                          )
_____)

## DECLARATION OF EVELYN BIDDLE

1.  I reside with my husband, Donald, at 1300C1 West Creek Village Drive, Elkton, MD 21921.
We moved to this apartment complex in 2000 and first lived at building 100; in July 2004, we
moved to building 1300.  We both have sciatic nerve damage.  Mine flared up in April 2004.  I
elected to treat it with physical therapy, rather than surgery.  I spent the summer of 2004 in a
wheelchair and now use one, or a walker, when the nerve flares up and the pain is severe.  In the
year since last summer, I have probably used a wheelchair 50% of the time and a walker 25% of
the time.  When the nerves flare up, it is difficult to sit, stand, or walk.  I take Skelaxin for the
pain.  My husband and I travel together and can take advantage of accessible parking spaces
using his Maryland handicapped parking placard.

2.  The curb at our parking space, the step at our front door, and the changes in elevation from
our apartment floor to our back deck and the absence of a ramp or some way to exit off the deck
have caused me pain, fatigue, and anxiety.

3. We contacted the property management company shortly after we moved in, to request a designated reserved accessible parking space in front of our apartment in building 100 and again at building 1300. The company installed sign at each building, but there is no curb ramp in front of building 1300 and the ramp leading from the parking lot to the sidewalk in front building 100 was about seven to eight yards away from our apartment. We chose not to use it, because the walk down and back was hard on me and my husband. That's too much wear and tear when you don't feel good. It hurts me and takes effort to step up and down the curbs at both buildings, however, because they are high, roughly six inches above the parking lot.

The same is true of the unusually high step at our front door, some eight inches above the walkway. Similarly, our backyard deck is roughly four inches below our apartment floor and six inches above the ground. In short, there is no quick, easy, painless way to enter or exit the home for either me or my husband. I am apprehensive about that in case an emergency requires us to leave quickly.

4. These problems were at their worst last summer when I was using a wheelchair all the time, and the times since when I have had to use one. My husband must assist me out our front door and at the curb to the parking lot. He positions the chair on the approach walk and I walk with my walker through the front door and down the step, and then transfer to the chair. I have to lean on the walker and move each part of my body at a time. My husband  pushes the chair to the car and I rise with the assistance of my walker to step down from the curb and enter the car. The process is then repeated in reverse. It is exhausting for both of us and we are constantly fearful that one or the other of us, or both, might fall. We did not ask for ramps at the curb or door because we were unaware that we had any right to do so.

Page 2 of 3

5. Additionally, when I must use the wheelchair, I cannot reach the thermostat in our home because it is located too high above the floor. I must wait until my husband returns or someone stops by. That makes me uncomfortable, not only because of the air temperature but because it magnifies my dependency with respect to living here and getting around.

Overall, the barriers cause me a lot of discomfort and aggravation which builds up and leaves me very stressed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July ___/ /___, 2005.

*Evelyn Biddle*

Evelyn Biddle

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No. 04-1455 |
| | ) | |
| West Creek, LLC, *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

### DECLARATION OF DONALD BIDDLE

1.  I reside with my wife, Evelyn, at 1300C1 West Creek Village Drive, Elkton, MD 21921. We moved to this apartment complex in 2000 and first lived at building 100; in July 2004, we moved to building 1300. We both have sciatic nerve damage. I have permanent damage that can no longer be improved through surgeries, the most recent of which took place in 2002. I am often in severe pain and have impaired mobility in my left leg, that restricts my ability to step up and down, bend over, and lift. I take medication for the pain, including Ultram. I have a Maryland handicapped parking placard. I use a cane when things get bad.

2.  The curb at our parking space, the step at our front door, and the changes in elevation from our apartment floor to our back deck and from the deck to the grass have caused me pain, fatigue, and anxiety, both because of my own efforts to maneuver up and down these and because of my efforts to assist my wife.

3.  We contacted the property management company shortly after we moved in, to request a designated reserved accessible parking space in front of our apartment in building 100 and again

at building 1300. The company installed sign at each building, but there is no curb ramp in front of building 1300 and the ramp leading from the parking lot to the sidewalk in front building 100 was about seven to eight yards away from our apartment. We chose not to use it, because the walk down and back was hard on me and my wife. That's too much wear and tear when you don't feel good. It hurts me and takes effort to step up and down the curbs at both buildings, however, because they are high, roughly six inches above the parking lot.

The same is true of the unusually high step at our front door, some eight inches above the walkway. I have almost tripped trying to get into the house because of the weakness in my left leg. Similarly, our backyard deck is roughly four inches below our apartment floor and six inches above the ground. In short, there is no quick, easy, painless way to enter or exit the home for either me or my wife. I am apprehensive about that in case an emergency requires us to leave quickly.

4. These problems were at their worst last summer. My wife underwent physical therapy for her sciatic nerve damage in April 2004 and spent the next three or four months using a wheelchair. When the nerve flares up now she also uses a wheelchair or a cane. When she is using the wheelchair, I must assist her out our front door and at the curb to the parking lot. I position the chair on the approach walk and she walks with her walker through the front door and down the step, and then transfers to the chair. I push the chair to the car and she rises with the assistance of her walker to step down from the curb and enter the car. The process is exhausting for both of us and we are constantly fearful that one or the other of us, or both, might fall. We did not ask for ramps at the curb or door because we were unaware that we had any right to do so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June __23 rd__, 2005.                    _Donald Biddle_

                                                          Donald Biddle

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America,                     )
                                              )
      Plaintiff                          )
                                              )
      v.                                 )    C.A. No. 04-1455
                                              )
West Creek, LLC, *et al.*,                    )
                                              )
      Defendants                         )
_____)

## DECLARATION OF DOROTHY MAY SHAFFER

1.  I reside at Singerly Manor, 1800 Singerly Road, Elkton, Maryland 21921. From April 2002

through August 2003, I lived with my son, Thomas Shaffer, at 1300C2 West Creek Village

Drive, in West Creek Village apartments, Elkton, MD 21921. I was 80-81 years old then and

morbidly obese. I had, and continue to have, diabetes, hypertension, and congestive heart failure.

I take several medications, use a walker, and have great difficulty going up or down stairs.

Walking is tiring, too, and can leave me out of breath.

2.  Because of my difficulty with stairs, my son and I chose to live in the 1300 building at West

Creek Village because, unlike other buildings, it had no steps on the walk leading to the front

door. There was a large step at my door, however, and a high curb between the sidewalk and the

parking lot surface, without any curb cut to serve this building. Although I have a Maryland

handicapped license placard, there were no handicap spaces in the apartment complex. My son

did not think to ask for one because there was no striping at all to indicate where cars should

park. People parked in the parking lot area next to the sidewalk or, if that was filled, in an area

separated from that by the roadway. My son often arrived home too late to park in the area

closest to our building.

3. It was a lot of effort for me to get up and down the step and curb and walk to his car. My son would have to place my walker ahead of me and then pull me up to the walker as I tried to raise each foot. Coming down, I would reach out for the walker and try to move one part of my body down and then the other. I was always tired and frazzled from this, and walking the distance to his car was a strain, too.

4. The curb and step basically kept me indoors. I'm a pretty social person. When I lived with my son in a place before West Creek Village, I had a Buick. I loved getting out. I used to drive to a little country store they had there. At West Creek, I couldn't even get out and meet the neighbors. We sold the Buick because I couldn't get to it to use it.

5. There also was a high curb around the mail boxes. I loved to get the mail because it was like someone talking to me. I got cabin fever all day with my son gone, and he sometimes went out of town for a few days. But I couldn't manage it, because of my front stoop, the curb at the parking lot, and then the other curb around the boxes. This upset me because it made me feel helpless and more alone during the day.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June __25__, 2005

_Dorothy May Shaffer_
Dorothy May Shaffer

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America,           )
                                    )
         Plaintiff                  )
                                    )
    v.                              )        C.A. No.  04-1455
                                    )
West Creek, LLC, *et al.*,          )
                                    )
         Defendants                 )
                                    )

## DECLARATION OF TINA HENRY

1.  I reside at 900D2 West Creek Village Drive in the West Creek Village apartments, Elkton,

MD 21921. I moved to this apartment in late July 2001. I am 67 years old and have had

increasingly severe osteoarthritis. I use a cane all of the time, cannot go up and down stairs, and

have a lot of pain standing, so much so that I use a stool to sit down every few minutes when

doing chores such as food preparation and ironing. I take Tylenol 3 with codeine when the pain

is unbearable. I was scheduled for knee replacement in December 2004 but the surgeon

discovered possible breast cancer for which I have since been diagnosed and treated. My knee

replacements are currently scheduled for June 2005.

2.  I have not requested an accessible parking space because I can park immediately in front of

my apartment 99% of the time. I use the hood of my car to push myself over the curb onto the

sidewalk. There is a step at my front door, however, roughly 8" high, a curb around the mail

kiosk, and a low backyard deck that give me a lot of trouble.

Arriving at my door, I must open the door and throw everything on the floor so my hands

are free, then I grab each side of the door frame and lift myself in. Coming out, I use the door

knob for balance. The mail kiosk is so hard to access on foot that I sometimes retrieve the mail only two or three times a week. Sometimes, if I have used my car to place my trash in the waste facility, I park as close as I can next to the kiosk island and use the car to brace myself and get myself up over the curb that surrounds it. Whether at the door or at the kiosk, these efforts are very tiring and painful.

My backyard deck is several inches below my apartment floor, and several inches above the grass that it sits on. I am a gardener and would ordinarily have it full of plants. The pain of stepping down and up, however, has curtailed this hobby. I miss it.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June __24__, 2005

_Tina Henry_

Tina Henry

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America,　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiff　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　)　　　C.A. No. 04-1455
　　　　　　　　　　　　　　　　)
West Creek, LLC, *et al.*,　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Defendants　　　　　　　　)
_____)

### DECLARATION OF THERESA WILKES

1.　I reside at 111A Presidential Drive, Greenville, Delaware 19807, with my son. From

September 2002 to September 2004, I lived at West Creek Village apartments in Elkton,

Maryland. I first lived in apartment #1 in the 900 building. I had to move to the 1200 building,

1200A1 West Creek Drive, in April 2003 because there was a fire in the apartment above mine.

2.　I have a seizure disorder and chronic obstructive pulmonary disease, which makes it hard for

me to breathe. I had these disabilities while living at West Creek Village. As a result, I am not

able to walk much and cannot walk up steps. I can only lift my foot up a little bit. I use a cane

when my knees are acting up. I am 69 years old and currently on oxygen. I use a cylinder tank

on a cart when I go out. Inside, I use an oxygen component with a 60 foot cord.

3.　There were barriers at West Creek that caused me pain and aggravation. For example, there

was no handicapped parking space at my unit. I have a Maryland handicapped placard but I did

not know that I could ask the apartment management company for an accessible space. I

sometimes had to park away from my home, and the walk back was exhausting.

4. There was also a high curb from the parking lot surface to the sidewalk in front of the 1200 building, without any curb ramps whatsoever. It was hard for me to step up this curb. In September 2003, I had just come home from the hospital from a bout with pneumonia. As I tried to step up the curb, I caught my left foot. I had a heavy robe on, and I went down on my knees. My son picked me up and carried me into the house. My knees hurt like heck. I am a retired nurse, so I knew to ice and elevate them. I put pillows under them when I went to bed. I had to take Darvocet for the pain initially, and then used Tylenol.

4. The sidewalk leading to my door sloped a lot, and there was a stair in the sidewalk as well as a stair at my front door. I tripped on these, though I didn't fall down. But the fear of tripping and falling made me anxious and slowed me up. I always had to walk very slowly and carefully, and plant one foot and then another very deliberately, especially when I had something in my hands, like groceries.

5. I also had trouble keeping my balance on the sidewalk in front of my building because it sloped steeply to the side there, and in front of the three or four buildings adjacent to mine, before it evened out. I had to walk in the roadway when the sidewalk slanted, and I almost got mowed down by a motorcycle.

Despite my health conditions, I like to get out and socialize and live my life. The conditions at West Creek made it harder for me to get around and made me feel fearful and fragile every day. I resented and was irritated about that, as much as the physical pain of falling down on my knees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ~~May~~ *JUNE* **23** , 2005.

Theresa Wilkes

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | C.A. No.  04-1455 |
| | ) | |
| West Creek, LLC, *il*, | ) | |
| | ) | |
| Defendants | ) | |

## DECLARATION OF JANET GARCIA

1.    I reside at 205 Kings Crossing Circle, #3B, Belair, MD 21014 with my daughter, Susan

Carroll and her husband.  They have a second home at 602 Crowley Drive, Unit K-2, in Bethany

Bay Resort Community, Millville, DE 19970.  They purchased the Bethany Bay condominium in

July 2004 and I spent last summer there with them, as I am doing this summer.  During the off

season, we visit the place about once a month.

2.   Since age 10, I have had rheumatoid arthritis, a chronic disease mainly characterized by

inflammation of the lining of the joints that often leads to long-term joint damage, resulting in

chronic pain, loss of function, and disability.  I am now 72 years old.  I have almost all my joints

replaced, including two replacements of a knee.   Consequently, I have a very limited range of

motion in my knees; I can barely bend them.  I am now undergoing tests for what may be a

rheumatoid cyst in my ankle, which could result in an operation to fuse my ankle bones or replace

the joint.  I will then need to use a wheelchair for about four months.

3.   There is a front step into the Bethany Bay condominium that is roughly 4-5" high.  I have

difficulty going up and down this step.  I must lean on the door jam and move one leg at a time.  It

really slows me down.  Pretty recently, the smoke detectors in the unit went off because the

batteries were dying. It was a false alarm but it made me worried. I can't get out of the house quickly because of the step. If I tried to go quickly, I'd probably fall and break something, since I don't have the strength in my arms and hands to stop myself. The step causes me a lot of effort, inconvenience, and now, anxiety.

I declare under pain of perjury that the foregoing is true and correct.

Executed on July _15_, 2005.

_Janet Garcia_
Janet Garcia

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | )    C.A. No.  04-1455 |
| | ) |
| West Creek, LLC, *et al.*, | ) |
| | ) |
| Defendants | ) |

**DECLARATION OF ALFRED DAVIS**

1.  I reside with my wife, Mary, at 13G Glen Creek Circle, Elkton, MD.  I formerly resided with

her at 100B2 West Creek Village Drive, Elkton, MD 21921, from April 2001 to April 2002.  I

have severe osteoarthritis in both knees that significantly restricts my ability to bend my legs,

walk, and climb stairs.  I use a cane and a walker to assist me in getting around, and I take

medication, 800 milligrams of Motrin, to alleviate the pain of this condition.  I had one knee

replaced in February 2005 and the other is scheduled for replacement in September 2005.

2.  When we first arrived in West Creek Village, I requested a handicapped parking space at my

apartment entrance, as I have a Maryland state handicapped license placard.  It took the property

manager about two months to have the space established.   In the meantime, I was forced to walk

long distances from a parking space elsewhere in the lot to get to my apartment.  That hurt my

knees and made me frustrated waiting for something I felt was my right to have.

3.  There was a step at my front door, a step up a curb to the mail boxes, and steps to the second

-floor rental office at 300A West Creek Village Drive where I paid my rent each month.  All of

these caused me pain.  I visited the rental office because I thought that's what we were supposed

to do, to make sure the rent was paid on time.

In September 2001, I fell off the step at my door and, to avoid going down on my knees full force, I landed on my elbow and fractured it. I called my daughter who called my wife, who came home to attend to me. The cost of having the bone set and to undergo physical therapy was about $3000. Medicare paid 80% and I paid 20%, or $600. The medical provider was Union Hospital, in Elkton. The arm hurt a lot when I broke it and the cast and recuperation was very uncomfortable.

4. We left West Creek Village apartments to find a place that was easier to manage. We went to Schoolbell Apartments in Bear, Delaware, where there was handicapped parking near our apartment and fewer steps.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 24, 2005.

_Alfred R Davis Sr_

Alfred Davis

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

United States of America,              )
                                       )
            Plaintiff                  )
                                       )
      v.                               )      C.A. No. 04-1455
                                       )
West Creek, LLC, *et al.*,             )
                                       )
            Defendants                 )
_____)

## DECLARATION OF ROBERT D. KOWALSKI

1.  I reside at 112 Talbot Drive, New Castle, DE 19720. I have a spinal cord injury that resulted in paraplegia. I use a wheelchair for mobility.

2.  Since 2001, I have rented a condominium at Bethany Bay Resort Community for two, one-week periods from the owner, Wayne Carter. There is a built-up curb ramp at the reserved handicapped parking space at his unit, and a wooden ramp from the approach walk to the walk that parallels his entry way. Both are steeper than those I am accustomed to using. The wooden ramp also has no handrails that I ordinarily use to get myself going on a ramp. For these reasons, I cannot use either ramp independently when I have things to carry, like my clothing bags from the car or groceries. I need help from someone to push me. I pride myself on doing things for myself, so it bothers me to be dependent on other people for assistance.

3.  Inside the unit, the thermostat is too high for me to reach. Again, I must ask for help in adjusting the air conditioning when I stay there.

4.  When I go for a walk around the complex, I must travel in the road because the only curb ramp for getting from the roadway to the sidewalk, that I'm aware of, is the one at Wayne

Carter's unit. I have rented his unit in the summer and, in the summer, there is a lot of traffic in the community because of renters and visiting families. I must make an extra effort to stay alert so that I don't get hit, because I have a low profile for a car's visibility.

5. I must use the clubhouse to check in as a renter when I arrive, and to pay for a parking permit. There is a wooden ramp from the ground to the clubhouse entry, but it sits in gravel. I have to wheel through the gravel to get to it. That is tough on my tires and takes a lot of effort with my arm and back muscles. It's annoying and pretty tiring.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June  30  , 2005.

Robert D. Kowalski